# EXHIBIT
# 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| | * |
| | * |
| **DUSTIN JOHN HIGGS,** | *     **Crim. No. PJM-98-0520** |
|        **Movant,** | * |
| | *     **Prior Civil No. PJM-05-3180** |
| **v.** | * |
| | * |
| **THE UNITED STATES OF AMERICA,** | * |
| | * |

**\* \* \* \* \***

**MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255**

Movant, Dustin John Higgs, through undersigned counsel, hereby files a motion to set aside

the judgment against him on Counts 5, 10 and 15, in case number PJM-98-0520, pursuant to 28

U.S.C. § 2255. As explained below, Mr. Higgs's convictions under 18 U.S.C. § 924(c) must be

vacated in light of the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319

(2019).

### INTRODUCTION

1.      On October 11, 2000, Mr. Higgs was convicted of three counts of using a firearm

during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A)(ii)

(Counts 5, 10 and 15).[1]  Specifically, the § 924(c) counts alleged that the underlying "crimes of

violence" for the § 924(c) charges were murder and kidnapping, in violation of 18 U.S.C. §§

1111 and 1201.

---

[1] Mr. Higgs was also convicted of three counts of premeditated murder (18 U.S.C. § 1111); three counts of felony murder (18 U.S.C. § 1111); and three counts of kidnapping resulting in death (18 U.S.C. § 1201(a)(2)).

2. The relevant portion of § 924(c) includes two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

3. On June 24, 2019, the Supreme Court held in *Davis* that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague. 139 S. Ct. at 2336.

4. The Supreme Court had previously held that *Johnson v. United States*, 135 S. Ct. 2551 (2015), finding a similar clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e), unconstitutionally vague, announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). Together, *Johnson* and *Welch* dictate that *Davis* must be retroactively applied.

5. Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define a "crime of violence" for purposes of a § 924(c) conviction. Furthermore, neither kidnapping under 18 U.S.C. § 1201 nor murder under § 1111 categorically qualifies as a "crime of violence" under the remaining force clause.

6. The Fourth Circuit has held that kidnapping under 18 U.S.C. § 1201(a) is *not* categorically a crime of violence. *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019).

7. Murder under § 1111 also does not categorically qualify as a "crime of violence." Section 1111 explicitly states that it can be accomplished by means, e.g. poison, that do not involve strong physical force. Moreover, § 1111 allows a conviction for felony murder, which

does not require the intentional use of violent force.  Therefore, under § 1111, murder does not categorically qualify as a "crime of violence."

8.	Because § 924(c)'s residual clause is unconstitutional, Mr. Higgs's § 924(c) convictions (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of this Court's jurisdiction. Further, Mr. Higgs is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Davis* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).

9.	Accordingly, Mr. Higgs respectfully asks this Court to grant his § 2255 motion and vacate his § 924(c) convictions.  Below, Mr. Higgs provides more detailed support for this motion.

## STATEMENT OF RELEVANT FACTS

### A.	Trial and Sentencing

10.	On December 21, 1998, Mr. Higgs was indicted for three counts of use of a firearm in the commission of a crime of violence (Counts 5, 10 and 15), pursuant to 18 U.S.C. § 924(c), in addition to a combined nine counts of premeditated murder, felony murder, and kidnapping resulting in murder.  *United States v. Haynes et al.*, Crim. No. PJM-98-0520.  On December 20, 1999, the grand jury returned a second superseding indictment.  The indictments charged first degree murder generally under 18 U.S.C. § 1111, without any specific reference to 18 U.S.C. § 1111(b), which authorizes a death sentence.

11.	On October 11, 2000, Mr. Higgs was convicted on all of the above counts following a jury trial.

12. On January 5, 2001, this Court sentenced Mr. Higgs to death on the capital counts, and to five years consecutive to the capital offenses on Count 5; 20 years consecutive to Count 5 on Count 10; and 20 years consecutive to Count 10 on Count 15.

**B.     Direct Appeals**

13. Mr. Higgs appealed to the Fourth Circuit, which upheld the convictions and sentences on direct appeal. *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).

14. While the direct appeal was pending, Mr. Higgs filed a motion for a new trial, alleging that the government had withheld *Brady* material relating to two witnesses. This Court denied the motion for new trial, and the Fourth Circuit again affirmed. *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004). Certiorari was denied with respect to each appeal. *Higgs v. United States*, 542 U.S. 999 (2004); *Higgs v. United States*, 543 U.S. 1004 (2004).

**C.     Previous 2255 Petitions**

15. On November 28, 2005, Mr. Higgs filed a motion for relief under 28 U.S.C. § 2255. On April 7, 2010, this Court denied the § 2255 motion. *United States v. Higgs*, Civil No. PJM-05-3180, 711 F. Supp. 2d 479 (D. Md. 2010). On November 23, 2011, the Fourth Circuit affirmed the denial of relief. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011). The United States Supreme Court denied certiorari on December 10, 2012. *Higgs v. United States*, 133 S. Ct. 787 (2012).

16. On December 4, 2014, Mr. Higgs moved for relief from the judgment in the § 2255 proceeding, pursuant to Fed. R Civ. P. 60(d). *United States v. Higgs*, Crim. No. PJM-98-0520, Civil No. PJM-05-3180. This Court denied the motion for relief. *United States v. Higgs*, 193 F.Supp.3d 495 (D. Md. 2016). The Fourth Circuit denied a certificate of appealability,

*United States v. Higgs*, No. 16-15, Order (4th Cir. Feb. 23, 2017), and the Supreme Court denied certiorari. *Higgs v. United States*, 138 S. Ct. 2572 (2018).

17. On May 23, 2016, Mr. Higgs filed in the Fourth Circuit a motion for leave to file a successive motion for relief under 28 U.S.C. § 2255, premised on the Supreme Court's decisions in *Johnson* and *Welch*. The Fourth Circuit denied the motion. *In re Higgs*, No. 16-8, Order (4th Cir. June 27, 2016).

### D. *Davis* and *Welch*

18. As discussed above, on June 24, 2019, the Supreme Court ruled in *Davis* that the residual clause of § 924(c) is unconstitutionally vague and therefore void. Previously, in reviewing claims brought under *Johnson*, the Court had found *Johnson*'s rule substantive and therefpre applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. After *Davis* and *Welch,* Mr. Higgs's § 924(c) convictions cannot be sustained. Accordingly, Mr. Higgs requested authorization from the Fourth Circuit to file a successive § 2255 petition.

### GROUNDS FOR RELIEF

**I. IN LIGHT OF *DAVIS*, MR. HIGGS'S § 924(C) CONVICTIONS CANNOT BE SUSTAINED BECAUSE NEITHER KIDNAPPING UNDER § 1201 NOR MURDER UNDER § 1111 QUALIFIES AS A "CRIME OF VIOLENCE."**

### A. Section 924(c)'s Residual Clause Is Unconstitutionally Void for Vagueness.

19. Section 924(c) defines "crime of violence" in two ways:

> (3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

20.     Section 924(c)(3)(B) is unconstitutionally vague.  *Davis*, 139 S. Ct. at 2336.  In *Johnson*—decided on similar grounds—the Court ruled that due process cannot tolerate "condemn[ing] someone to prison for 15 years to life," based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560.  Likewise, due process cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

21.     Mr. Higgs's convictions under § 924(c) must be overturned because the convictions turn on a determination that the predicate offenses are "crime[s] of violence."  The unconstitutional residual clause is no longer available to support the convictions, and federal murder and federal kidnapping do not satisfy the remaining force or elements clause, § 924(c)(3(A).  Therefore, the convictions are invalid.

**B.     Federal Kidnapping and Murder Fail to Categorically Qualify as "Crimes of Violence" under the Force Clause of Section 924(c).**

**1.     The categorical approach applies to the § 924(c) force clause.**

22.     As the Fourth Circuit held in *United States v. Fuertes,* 805 F.3d 485, 498 (4th Cir. 2015), to determine whether an offense qualifies as a "crime of violence" under the § 924(c) force clause, the district court must "employ the categorical approach or the modified categorical approach." *Id.* (internal quotation marks omitted).  The statutory text of the § 924(c) force clause alone demands this categorical framework.  Indeed, as the Fourth Circuit reinforced in *United States v. Simms*, 914 F.3d 229, 233, 239, 241 (4th Cir. 2019) (en banc), and the Supreme Court confirmed in *Davis,* 139 S. Ct. at 2328, the words "offense" and "elements" in § 924(c)(3)(A) mandate the categorical framework.  Under this approach, courts can only "look to whether the statutory elements of the offense [of conviction] necessarily require the use, attempted use, or

threatened use of physical force." *Simms*, 914 F.3d at 233. "This approach is 'categorical' because the courts consider only the crime as defined, not the particular facts in the case." *Id.*

23. For the limited purpose of "help[ing] to implement the categorical approach," in a "narrow range of cases," a federal sentencing court may look at a short list of judicial documents (authorized by *Shepard v. United States,* 544 U.S. 13, 26 (2005)) to determine whether the defendant was "necessarily" convicted of an offense that qualifies as a "crime of violence." *Descamps v. United States*, 570 U.S. 254, 261, 262 (2013). This approach, known as the modified categorical approach, is also driven by the elements.

24. In *Descamps,* the Supreme Court clarified that a federal court may apply the modified categorical approach only if the relevant crime at issue is divisible. *Id.* at 260. An offense is divisible if it has alternative elements, and thus creates multiple crimes, some of which constitute a "crime of violence" and some of which do not. *Id.* at 260-61. If a statute is divisible, a federal sentencing court may review *Shepard* documents only to determine "which of the statute's alternative elements" necessarily formed the basis of the defendant's conviction. *Id.* at 262.[2] In this way, the modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool. It retains the categorical approach's central feature: a focus on the elements rather than the facts, of a crime." *Id.* at 263.

25. Furthermore, under the modified categorical approach, a court cannot lawfully make a "crime of violence" finding unless the *Shepard* documents establish with "certainty" that

---

[2] These documents are the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant, a judge's factual findings in a bench trial, jury instructions, and comparable judicial records. *Shepard*, 544 U.S. at 13, 20, 26.

the defendant was "necessarily" convicted of elements constituting a "crime of violence."

*Shepard*, 544 U.S. at 21-22, 23. "[P]lausibility or even likelihood" that the defendant was

convicted of elements constituting a "crime of violence" will not suffice. *United States v. Clay*,

627 F.3d 959, 967 (4th Cir. 2010). This "demand for certainty" avoids "evidentiary inquiries

into the factual basis for the conviction" that the categorical framework forbids. *Shepard*, 544

U.S. at 21, 22. This stringent standard comports with "[t]he point of the categorical inquiry,"

which "is not to determine whether the defendant's conduct *could* support a conviction for a

crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that

qualifies as a crime of violence." *Fuertes*, 805 F.3d at 498 (citation omitted).

26.     Applying this demand for certainty, when the *Shepard* documents do not establish

the elements of which a defendant was "necessarily" convicted, the court must assume that the

defendant was convicted of the "least serious" of the disjunctive elements of the statute. *United

States v. Chapman,* 666 F.3d 220, 227 (4th Cir. 2012) (en banc). This is true even when a count

in the indictment alleges the alternative elements in the conjunctive. As the Fourth Circuit held

in *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc), and again in *Chapman*,

666 F.3d at 228, the mere fact that a count in an indictment charges alternative elements of a

statute in the conjunctive (for example, a § 924(c) count which alleges both kidnapping and

murder as § 924(c) predicates) does not mean that the defendant was necessarily convicted of

both sets of elements. "Indictments often allege conjunctive elements that are disjunctive in the

corresponding statute, and this does not require either that the government prove all of the

statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty."

*Vann*, 660 F.3d at 774 (quoting *Omari v. Gonzales,* 419 F.3d 303, 308 n.10 (5th Cir. 2005)).

27. Therefore, "when a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct," unless *Shepard* documents conclusively establish otherwise. *Chapman,* 666 F.3d at 227-28. This same rule applies to jury trials. As the en banc Fourth Circuit clarified in *Vann,* similar to guilty pleas*,* "in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict form identifying the factual bases for conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." 660 F.3d at 774.[3]

28. If the least serious of the disjunctive elements is broader than the § 924(c) "crime of violence" definition, then the offense categorically fails to constitute a "crime of violence" and cannot support a § 924(c) conviction.

### 2. The § 924(c) force clause includes only offenses that require an intentional and knowing act of violent physical force.

29. Before addressing the elements of kidnapping and murder, it is important to set forth the parameters of the § 924(c) force clause. Specifically, the force clause only includes offenses that require (1) an intentional and knowing act (2) of violent physical force (3) against the person or property of another.

---

[3] *See id.* at 775 ("if Vann had gone to trial in the underlying cases, any resulting conviction could only be used as an ACCA predicate conviction if the jury had returned a special verdict (or answered an interrogatory) specifically finding him guilty of violating subsection (a)(2) of the Statute.").

### a. The force clause requires violent physical force.

30. As dictated by *Johnson v. United States,* 559 U.S. 133, 140 (2010), the word "physical force" in the § 924(c) force clause requires the use of "violent force," which necessarily "connotes a substantial degree of force." *Id.* at 140. In other words, violent force is "strong physical force . . . capable of causing physical pain or injury to another person." *Id.*[4]

31. In so holding, the Supreme Court in *Johnson* indicated that de minimis force (such as the squeeze of an arm that causes a bruise) is not violent physical force. *Id*. (citing with approval *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003)). In its subsequent decision in *United States v. Castleman*, 572 U.S. 157, 165 (2014), the Supreme Court again relied on *Flores* to explain that an offense which criminalizes "a squeeze of an arm [that] causes a bruise" is non-violent force that falls outside of the force clause. *Id.* (quoting *Flores*, 350 F.3d at 670).

### b. The force clause requires both a knowing and intentional mens rea.

32. The § 924(c) force clause requires the *intentional* use of force. Therefore, an offense that can be committed by reckless or negligent use of force is not a qualifying offense under the force clause.

33. In *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2014), the Supreme Court held that the force clause of 18 U.S.C. § 16(a)—which is identical to the § 924(c) force clause—requires "a higher mens rea than . . . merely accidental or negligent conduct."

---

[4] In *Johnson*, at issue was the force clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i). Nonetheless, as the Fourth Circuit has held, *Johnson*'s "violent force" requirement applies equally to the materially indistinguishable § 924(c) force clause at issue here. *See United States v. Evans,* 848 F.3d 242, 245 (4th Cir. 2017); *United States v. McNeal,* 818 F.3d 141, 154 (4th Cir. 2016).

34. The Fourth Circuit has confirmed and expanded that holding since then, repeatedly explaining that the force clause requires the intentional use of force—a higher degree of mens rea than recklessness or negligence. *See United States v. Simmons,* 917 F.3d 312, 321 (4th Cir. 2019) (North Carolina conviction for assault with deadly weapon on government official was not a qualifying offense under force clause because it could be violated by "culpable negligence"); *United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) (Floyd, J., concurring, joined by Harris, J.) (ACCA force clause requires a higher degree of mens rea than recklessness; therefore South Carolina involuntary manslaughter statute was not qualifying offense under force clause); *United States v. Townsend*, 886 F.3d 441, 444-45 (4th Cir. 2018) ("'[u]se' of force means to act with a mens rea more culpable than negligence or recklessness"); *United States v. Smith*, 882 F.3d 460, 464 (4th Cir. 2018) (a crime of violence requires "a higher mens rea than merely accidental or negligent conduct") (quotation marks and citation omitted); *United States v. McNeal*, 818 F.3d 141, 155 (4th Cir. 2016) (recklessness not enough to qualify under the § 924(c) force clause); *United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015) (negligent or reckless conduct does not constitute a "use" of physical force); *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) ("[R]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence'" under the force clause); *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 444-47 (4th Cir. 2005) (same); *see also United States v. Vederoff,* 914 F.3d 1238, 1248 (9th Cir. 2019) (Washington second degree murder is not a qualifying offense under the force clause because it can be committed by a "negligent or even accidental felony murder").

35. Finally, as the Fourth Circuit held in *Middleton*, 883 F.3d at 492, an offense which can be committed without *knowingly* causing violent physical force is not a qualifying

11

offense under the force clause.  Specifically, in *Middleton*, this Court found that a South Carolina manslaughter statute did not constitute an ACCA violent felony under the force clause because the offense can be committed by a defendant who merely sells alcohol to another, who in turn, shares the alcohol with a driver, who becomes drunk and crashes the car causing bodily injury to another.  *Id.*  Under such an expansive offense with attenuated causation, this Court held that one can be convicted without "employing [alcohol] *knowingly* as a device to cause physical harm." *Id.*  The Court explained that the "force clause is written too narrowly to encompass such a broad range of criminal behavior" that can be committed by unknowingly causing physical harm through an attenuated chain of causation.  *Id.*

### 3. Federal kidnapping is not a crime of violence under the §924(c) force clause.

36.  Under the categorical approach, federal kidnapping does not qualify as a crime of violence, because the offense can be committed through non-forceful means.

37.  Federal kidnapping does not categorically require violent force.  Instead, the crime may be accomplished through non-physical means, such as by "inveigling" or "decoying." 18 U.S.C. § 1201(a); *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) (noting that a kidnapper may "use[] deceit and trickery to accomplish his purpose rather than overt force"); *see also United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) ("By its terms, § 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, nonforcible means.").

38.  Because a violation of § 1201 can be committed by means of fraud or deception instead of by force, it does not categorically include the "physical force" as an element of the offense, as  necessary to qualify kidnapping as a "crime of violence" under § 924(c)(3)(A).

12

39.     Likewise, the requirement that the kidnapper "hold" the victim for ransom or reward does not categorically require physical force.  As the Supreme Court has explained, "the act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical *or mental restraint* for an appreciable period against the person's will and with a willful intent so to confine the victim."  *Chatwin v. United States*, 326 U.S. 455, 460 (1946) (emphasis added).  Thus, the element of "holding" may be fulfilled through non-forceful means such as "mental restraint."  Moreover, the victim need not even be aware of such restraint: "[i]f the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim."  *Id.* The Fourth Circuit has held that this element is satisfied where the defendant induced the victim to enter his vehicle by misrepresentation.  *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983).

40.     Applying these lines of precedent, the Fourth Circuit has held that kidnapping under 18 U.S.C. § 1201(a) is *not* categorically a crime of violence.  *United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019) (citing inter alia *Wills*, *Chatwin* and *Hughes*).

### 4.     Federal first degree murder does not categorically qualify as a crime of violence under the "force" clause.

41.     Section 1111(a) defines first degree murder as follows:

Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

18 U.S.C. § 1111(a).

42.     Murder under § 1111(a) thus includes the killing of a human being during the course of several enumerated felonies (felony murder) and premeditated murder.  As defined by the statute, felony murder is not categorically a crime of violence under the force clause because felony murder does not require the intentional use of violent force.  For example, if a person commits a kidnapping by means of deceit or trickery (*see* subpart 3, *supra*), and the victim dies as the result of accidental or reckless conduct during the course of the kidnapping, the defendant could be convicted of felony first degree murder even though the defendant did not intentionally use violent force.  Indeed, for felony murder under § 1111(a), the intent element is satisfied by proving the predicate felony or felonies.  *See United States v. Williams*, 4 F. Supp. 3d 1235, 1238 (D. Haw. 2014).

43.     In *Leocal*, the Court held that the force clause of 18 U.S.C. § 16(a)—which is identical to the § 924(c) force clause—requires a "higher mens rea than . . . merely accidental or negligent conduct."  543 U.S. at 1.  An offense that, like § 1111(a), includes reckless or negligent felony murder, is therefore not categorically a crime of violence.  *See Vederoff*, 914 F.3d at 1248 (Washington second degree murder statute that included felony murder was not categorically a crime of violence).[5]

---

[5] This Court has held that second degree retaliatory murder under 18 U.S.C. § 1513(a) is categorically a crime of violence.  *In re Irby*, 858 F.3d 231, 234-36 (4th Cir 2017).  *Irby*, however, is distinguishable.  The retaliatory murder statute—§ 1513(a)—has as an element killing or attempt to kill "with intent to retaliate."  18 U.S.C. § 1513(a)(1).  By its terms, § 1513(a)(1) requires specific intent to retaliate—satisfying the mens rea requirement—while § 1111(a) applies to both intentional killings and reckless or negligent felony murder.

**5. Under the categorical approach, this Court must assume that Mr. Higgs's § 924(c) count was predicated on kidnapping, which is clearly not a "crime of violence."**

44.     Even assuming arguendo that murder is considered a crime of violence (though it should not be), under the categorical approach, this Court must assume that kidnapping was the predicate offense here.

45.     Applying the categorical approach here, the Court must first determine the alleged "crime of violence" upon which Mr. Higgs's § 924(c) convictions (Count Five, Ten and Fifteen) were predicated.  The alleged crimes of violence in those counts were murder and kidnapping. *See United States v. Higgs*, Crim. No. PJM-98-0520, Second Superseding Indictment.  Because the indictment alleged alternative predicate crimes, this Court must apply the modified categorical approach and review the available *Shepard* documents to determine which of the multiple crimes necessarily served as the basis for the § 924(c) conviction.

46.     The available *Shepard* documents here—the indictment, the jury instructions, and the verdict form—fail to conclusively establish the basis for the § 924(c) conviction.  Although the indictment alleged both kidnapping and murder (in the conjunctive) as the "crime of violence" under § 924(c), the verdict form directed that the jury could find guilt on either kidnapping *or* murder:

> Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder *or* the kidnapping of Tamika Black?
>
> Guilty _____          Not Guilty _____

ECF No. 360 (emphasis added) (attached).[6]

47.    The jury found guilt under these terms without specifying whether kidnapping or murder was the basis for the § 924(c) conviction.  *Id.* at 1.

48.    Moreover, the jury instructions on the § 924(c) count authorized such an ambiguous verdict because they stated that both kidnapping and murder were "crimes of violence," but never required the jury to select one versus the other or even unanimously find one versus the other as the § 924(c) predicate:

> The first element the government has to prove beyond a reasonable doubt is, again, the defendant committed or counseled, commanded, induced, procured or willfully caused another to commit a crime of violence for which he might be prosecuted in a court of the United States.
>
> The defendant is charged in the indictment with the crime of murder. He is also charged in the indictment with the crime of kidnapping. I instruct you that each of these crimes are crimes of violence. However, it is for you to determine whether the government has proved beyond a reasonable doubt that the defendant committed or counseled, commanded, induced, procured or willfully caused another to commit the crimes of violence charged.

Trial Tr. vol. 18, 79-80, Oct. 10, 2000.

49.    Therefore, it is possible that six jurors predicated § 924(c) guilt on kidnapping while six jurors predicated § 924(c) guilt on murder.  Or it could be that all twelve jurors found § 924(c) guilt on kidnapping.  We just do not know.

50.    Due to this grave ambiguity, the general verdict form and jury instructions fail to meet *Shepard*'s "demand for certainty."  544 U.S. at 22.  Therefore, as *Vann* and *Chapman* direct, this Court must assume that Mr. Higgs's § 924(c) conviction was predicated on the least

---

[6] The same wording was used in the instructions for the firearms offenses charged in relation to the other victims.

serious of the two offenses, i.e. kidnapping. Because kidnapping categorically fails to qualify as a § 924(c) "crime of violence," the § 924(c) convictions are void.

**6.  The *Shepard* error is exacerbated because the jury instructions authorized a non-unanimous verdict on a non-existent offense.**

51.  The *Shepard* error is exacerbated here because the jury instructions authorized a non-unanimous verdict on a non-existent offense. The district court instructed the jury that it could convict on either the use of a firearm during kidnapping *or* use of a firearm during murder. The court did so without requiring unanimity on either option. Therefore, six jurors could have convicted based on use of firearm during and in relation to a kidnapping and six jurors could have convicted based on use of a firearm during and in relation to murder. And the use of a firearm during and in relation to kidnapping is not a criminal offense because kidnapping never qualifies as a "crime of violence" necessary to secure a conviction under § 924(c). Therefore, one can never be convicted under § 924(c) for using a firearm during and in relation to kidnapping.

52.  Under these circumstances, the district court authorized a non-unanimous verdict on a non-existent offense—a double error that exacerbated the *Shepard* error. The Sixth Circuit's decision in *United States v. Savoires,* 430 F.3d 376, 380 (6th Cir. 2005), illuminates this point well. As here, the district court in *Savoires* gave the jury two options for guilt. *Id.* The court instructed the jury that it could find guilt based on either possession of a firearm during and in relation to a drug trafficking offense *or* possession of a firearm in furtherance of a drug trafficking offense. *Id.* at 380. The district court did so without requiring unanimity on either option. *Id.* And possession of a firearm during and in relation to a drug trafficking offense is not an offense under § 924(c). *Id.* Rather, § 924(c) only criminalizes possession of a firearm

17

*in furtherance of* a drug trafficking offense. *Id.* The Sixth Circuit found plain error after concluding that (1) the error "affected Savoires' substantial rights by authorizing a [a non-unanimous] conviction for a non-existent offense," and (2) "[t]he possibility of such an outcome undermined the fairness of Savoires' trial." *Id.* at 381. This Court should find the same here with respect to the jury instructions, which likewise authorized a non-unanimous verdict on a non-existent offense.

53. The Eleventh Circuit's decision in *In re Gomez*, 830 F.2d 1225 (11th Cir. 2016), further reinforces the harmfulness of the error here. In that case, as here, the jury was instructed that it could predicate § 924(c) guilt on a single count based on multiple predicate offenses. *Id.* at 1227. The jury was never instructed that it had to be unanimous as to any of these predicate offenses or identify any of these predicates as the basis for the § 924(c) conviction. *Id.* Therefore, the Eleventh Circuit found that "we can't know what, if anything, the jury found with regard to Gomez's connection to a gun and these crimes. That is because the jurors had multiple crimes to consider in a single count, so they could have convicted Gomez of the § 924(c) offense without reaching unanimous agreement on during which crime it was that Gomez possessed the firearm." *Id.* The Court further explained that "a general verdict of guilty does not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of the predicate offenses, or guilty of conspiring during some and not others." *Id.*

54. Importantly, the Eleventh Circuit refused to speculate as to what the jury could have or would have found based on evidence presented at trial. *Id.* Rather, the court assumed that the ambiguous verdict was harmful to Gomez because it could have been predicated on a non-unanimous finding on a non-existent offense. *Id.* Likewise, the ambiguous verdict on a

non-existent offense in Mr. Higgs's case is harmful error that renders his § 924(c) convictions void.

**II. MR. HIGGS IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2255 BECAUSE HIS CLAIM UNDER *JOHNSON* IS COGNIZABLE, TIMELY, AND SATISFIES THE SUCCESSIVE PETITION REQUIREMENTS OF § 2255(H)(2).**

**A. Mr. Higgs's Claim Is Cognizable Under § 2255(a).**

55. A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Higgs's § 924(c) convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

56. First, for all the reasons explained above, Mr. Higgs's convictions on Count 5, 10 and 15—the § 924(c) charges—violate due process because they depended on the unconstitutionally vague residual clause.

57. Second, as also explained above, federal kidnapping and murder under 18 U.S.C. § 1201(a) and § 1111(a) cannot satisfy § 924(c)'s force clause. Mr. Higgs's indictment therefore failed to state an offense under § 924(c), and Mr. Higgs stands convicted of offenses that are no longer criminal. Given this, his convictions violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

58.     Third, Mr. Higgs's convictions exceed this Court's jurisdiction because not only did the indictment fail to state a § 924(c) offense, it affirmatively alleged conduct that is outside that statute's reach.  That is, Counts 5, 10 and 15 of the Second Superseding Indictment alleged that Mr. Higgs used or carried a firearm during or in relation to murder and kidnapping, offenses that, as discussed above, do not categorically qualify as "crime[s] of violence" for purposes of § 924(c).

59.     Thus, Counts 5, 10 and 15 fail to state § 924(c) offenses.  Mr. Higgs's convictions on Counts 5, 10 and 15 therefore are legal nullities that were entered in excess of this Court's jurisdiction, and must be vacated.  *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th Cir. 1985).

### B.     Mr. Higgs's Motion for Relief Is Timely.

60.     Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period.  That period runs from the latest applicable triggering event.  28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.,* § 2255(f)(3).

61.     The Supreme Court decided *Davis* on June 24, 2019.  Mr. Higgs has filed this application within one year of that date.  Moreover, *Davis* is retroactively applicable to cases on collateral review.  In *Tyler v. Cain*, the Court held that a case is retroactively applicable if (1) the Supreme Court has expressly held that the new rule is retroactive, or (2) the Supreme Court's holdings in "[m]ultiple cases . . . necessarily dictate retroactivity of the new rule."  533 U.S. at

662-64, 666 (considering the equivalent statutory requirement for state prisoners under 28 U.S.C. § 2244(b)(2)(A)).  Because the Supreme Court in *Davis* did not expressly state whether its holding applies retroactively, the question becomes whether the retroactivity of *Davis* is "necessarily dictated" by the holdings of multiple cases.  *Id.* at 666.

62.     The Supreme Court's decisions in *Johnson* and *Welch* dictate the retroactivity of the rule in *Davis*.  In *Welch,* the Supreme Court explained that *Johnson*'s rule is substantive, because that rule means the residual clause "can no longer mandate or authorize any sentence." 136 S. Ct. at 1265.  *Johnson* establishes, in other words, that "'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause."  *Id.* (quoting *United States* v. *United States Coin & Currency*, 401 U. S. 715, 724 (1971)).  Therefore, the Court held, *Johnson* is "a substantive decision and so has retroactive effect under *Teague* in cases on collateral review."  *Id*.

63.     Because the reasoning of *Welch* applies equally to *Davis* as to *Johnson*, the Eleventh Circuit held that *Davis* likewise has been made retroactive to cases on collateral review:

> [T]he Supreme Court held in *Welch* that *Johnson* announced a new substantive rule.  Specifically, the *Welch* Court determined that the new constitutional rule announced in *Johnson* was substantive because, by striking down the ACCA's residual clause, *Johnson* substantively altered the range of conduct or the class of persons the ACCA could punish.  As such, the Court determined that *Johnson*'s new rule fell within *Teague*'s first exception and, so, was retroactive.  Since the Supreme Court's decision in *Welch*, this Court has recognized that federal prisoners who can make a *prima facie* showing that they were previously sentenced in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion.

> The same rationale applies here.  As we have already explained, by striking down § 924(c)(3)(B)'s residual clause, *Davis* altered the range of conduct and the class of persons that the § 924(c) statute can punish in the same manner that *Johnson* affected the ACCA.  In other words, *Davis* announced a new substantive rule, and *Welch* tells us that a new rule such as the one announced in *Davis* applies retroactively to criminal cases that became final before the new substantive rule

21

was announced.  Consequently, for purposes of § 2255(h)(2), we conclude that, taken together, the Supreme Court's holdings in *Davis* and *Welch* "necessarily dictate" that *Davis* has been "made" retroactively applicable to criminal cases that became final before *Davis* was announced.

*In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019) (citations omitted).[7]

64.     The Eleventh Circuit's analysis is correct.  The Supreme Court's decisions in *Johnson* and *Welch* make *Davis* retroactive to cases on collateral review.  Indeed, the Solicitor General has conceded that *Davis* is retroactive on collateral review.  *See* Brief for the United States, *United States v. Davis*, Sup. Ct. No. 18-431 (Feb. 12, 2019), at 52 ("A holding of this Court that Section 924(c)(3)(B) . . . is unconstitutionally vague would be a retroactive substantive rule applicable on collateral review.") (citing *Welch*, 136 S. Ct. at 1264).

**C.     Mr. Higgs's Successive § 2255 Motion Satisfies the Requirements of 28 U.S.C. § 2255(h)(2) Because *Johnson* Announced a New, Previously Unavailable Rule of Constitutional Law, and the Supreme Court Has Made *Johnson* Retroactive to Cases on Collateral Review.**

65.     Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions.  Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals.  *See* 28 U.S.C. § 2255(h)(2).  The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).

---

[7] The Eleventh Circuit has held that a movant who files one successive § 2255 motion is barred under 28 U.S.C. § 2244(b)(1) from filing a second successive motion raising the same claim.  *In re Baptiste*, 828 F.3d 1337, 1339-40 (11th Cir. 2016).  As far as counsel is aware, the Fourth Circuit has never ruled on that issue.  In any event, a claim under *Davis* is sufficiently distinct from a claim under *Johnson* that this bar would not apply.  *Hammoud*, 931 F.3d at 1039-40.

66.     Mr. Higgs files this successive § 2255 motion after requesting authorization to do so from the Fourth Circuit under § 2255(h)(2).  Because Mr. Higgs has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Fourth Circuit's certification should be forthcoming.

**III.     MR. HIGGS IS ENTITLED TO BE RESENTENCED BECAUSE THE UNCONSTITUTIONAL § 924(C) CONVICTIONS IMPROPERLY INFLUENCED THE IMPOSITION OF THE DEATH PENALTY.**

67.     Mr. Higgs's three § 924(c) convictions never should have been before the jury in the first instance since, under *Davis*, those convictions are unconstitutional.  Where, as here, a defendant has been sentenced to death after receiving multiple convictions, several of which are subsequently invalidated, the "real question," the Supreme Court has said, is "whether the sentence [on valid convictions] might have been different" if the jury had known that the other "convictions had been unconstitutionally obtained."  *United States v. Tucker,* 404 U.S. 443, 448 (1972).

68.     Relying upon *Tucker,* courts have held that a defendant must be resentenced on any valid convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions.  *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986); *see also Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v. United States,* 476 F.2d 936 (8th Cir. 1973) (same).

69.     That bar is heightened where, as here, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment[.]'" *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988) (citations omitted).  That is because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decisions

citizens and public officials are called upon to make." *Mills v. Maryland,* 486 U.S. 367, 383-84 (1988). And the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Id.* at 384 (emphasis added).

70. Here, it cannot be ascertained from the record that the jury's death verdicts were "not affected" by the unconstitutional § 924(c) convictions. *Whitley,* 784 F.2d at 721. The record fails to eliminate, as it must the "possibility" that the "jury conducted its task improperly." *Mills,* 486 U.S. at 383. It is more than possible that the cumulative weight of three § 924(c) convictions—none of which actually constituted a crime and should not have ever been before the jury— affected the jury's decision to impose a sentence of death.

71. In light of the Eighth Amendment's heightened requirement of reliability in capital sentencing and because the "possibility" exists that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death, Mr. Higgs must be resentenced on the remaining counts.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Higgs respectfully asks this Court to vacate his convictions and sentences on Counts 5, 10 and 15, the invalid charges under 18 U.S.C. § 924(c). Mr. Holder further requests the following relief:

a)      That this Court remand this case for a new penalty phase trial on the kidnapping and murder charges.

b)      That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c)      That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d)      Any other relief that may be necessary to correct Mr. Higgs's invalid convictions and sentences.

Respectfully Submitted,


/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
    for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org

/s/ Stephen H. Sachs
Stephen H. Sachs
WilmerHale LLP
Five Roland Mews
Baltimore, MD 21210
(410) 532-8405
Steve.Sachs@wilmerhale.com


Dated: January 6, 2020